UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| In re: | Chapter 7 |
|---|---|
| Scott L. Fenstermaker, | Case No. 24-10108 |
| Debtor | |

**ORDER OVERRULING, IN PART, OBJECTIONS TO EXEMPTIONS**

Scott L. Fenstermaker began this bankruptcy case in May 2024, filing his petition, schedules, and other required forms [Dkt. No. 1]. In June 2024, Mr. Fenstermaker amended his schedule of assets (schedule A/B) [Dkt. No. 9]. About 10 months later in April 2025, following an effort by the chapter 7 trustee to liquidate certain assets, Mr. Fenstermaker again amended his schedule of assets and also amended his schedule of claimed exemptions (schedule C) [Dkt. No. 81]. *See* Fed. R. Bankr. P. 1009(a)(1) (permitting debtor to amend schedules, among other things, "at any time before the case is closed").

Certain amendments to the claimed exemptions drew objections from Mr. Fenstermaker's estranged spouse, Linda Fenstermaker [Dkt. No. 87].[1] Mr. Fenstermaker responded in defense of the exemptions [Dkt. No. 94]. The Court held a nonevidentiary hearing on the matter and, for reasons discussed below, now overrules the objections, in part, and provides a further briefing opportunity on certain limited issues.

---

[1] The chapter 7 trustee joined in those objections, adopting "the reasons and grounds" for the arguments made by Ms. Fenstermaker, without any modification or elaboration [Dkt. No. 88]. At a hearing on the objections, discussed below, the trustee declined to make any separate arguments about the objections, expressing that Ms. Fenstermaker's counsel would be "taking the lead on the objection[s]."

1

<u>*Life Insurance Policy 7273*</u>

On his original schedules, Mr. Fenstermaker did not disclose an interest in any life insurance policy, although he did list life insurance among his monthly expenses. Twenty-six days later, when first amending schedule A/B, he disclosed an interest in "life insurance on wife" with a surrender or refund value of $0.00. The disclosure was made ten days before the date scheduled for the first meeting of creditors in this case. At that point, he did not amend schedule C to claim any exemption in the disclosed interest.[2]

Several months later, in connection with a proposed settlement, the chapter 7 trustee sought authority to sell or transfer the estate's interest in the life insurance policy (among other things) to Ms. Fenstermaker. Mr. Fenstermaker objected. And, soon after a hearing on the trustee's requests, Mr. Fenstermaker amended schedules A/B and C. On this second amended schedule A/B, Mr. Fenstermaker more specifically described the life insurance policy—"USAA Life Insurance on Wife's life"—listing himself as the beneficiary and maintaining the $0.00 value. On amended schedule C, he claimed an exemption under state law in "USAA Life Insurance Account ending 7273"—referencing the life insurance policy on Ms. Fenstermaker's life. Ms. Fenstermaker objected to this exemption on multiple grounds. At the hearing on the matter, however, she narrowed her arguments down to one: concealment of the asset.

All parties agree that Mr. Fenstermaker owned the policy (a term life insurance policy) when he filed his bankruptcy petition. In paragraph 14 of her objection, Ms. Fenstermaker contends that Mr. Fenstermaker "initially claimed that [she] was the owner of the policy" and then "submitted outdated information" in support of that claim. As recounted by Ms.

---

[2] At the time, Mr. Fenstermaker was represented by counsel. Counsel was permitted to withdraw about two months later in August 2024, and Mr. Fenstermaker has represented himself since then.

2

Fenstermaker's counsel at the hearing, Mr. Fenstermaker acknowledged that he owned the policy only after "a considerable amount of back and forth between [Mr. Fenstermaker], Ms. Fenstermaker, and the trustee," and after being presented with proof obtained by Ms. Fenstermaker from the issuer of the policy. Ms. Fenstermaker's counsel maintained that, although the claimed exemption seems to apply to the policy, Mr. Fenstermaker should not be permitted to claim any such exemption because he did not disclose the policy on his original schedule A/B and belatedly acknowledged that he owned the policy.

Mr. Fenstermaker generally disputes that he attempted to conceal his interest in the policy. He denies having ever said that Ms. Fenstermaker owned the policy. And he suggests that a different life insurance policy (on his own life) may have led to confusion for Ms. Fenstermaker and the trustee.

No party has requested an evidentiary hearing on the objection to exempting the life insurance policy. In any event, given how the analysis unfolds below, the Court concludes that no evidentiary hearing would be warranted.

A debtor's bad-faith concealment of an asset can lead to adverse consequences. *See, e.g.*, 11 U.S.C. § 727(a)(4)(A) (including "knowing[] and fraudulent[] . . . false oath or account" as basis for denial of discharge). For more than a decade, however, some courts have been disinclined to deprive debtors of exemptions as a consequence of their bad-faith conduct. *E.g.*, Mateer v. Ostrander (In re Mateer), 525 B.R. 559, 565-67 (Bankr. D. Mass. 2015) (discussing impact of certain dicta in Law v. Siegel, 571 U.S. 415, 423-25 (2014)).[3] Even if such conduct

---

[3] In support of her argument that the concealment of an asset provides a basis for the denial of an exemption, Ms. Fenstermaker cites cases that were all decided before Law v. Siegel.

3

could provide a basis for disallowing a claimed exemption, the suboptimal circumstances summarized above would be insufficient to persuade the Court to take such action.

Assuming (but not finding) that Mr. Fenstermaker provided incorrect information about the policy's ownership and then waited until proof was presented before acknowledging that he owned the policy, one cannot reasonably infer from those and other details here that Mr. Fenstermaker necessarily attempted in bad faith to conceal the asset. Of note, on his original schedules, Mr. Fenstermaker disclosed a sizeable monthly life insurance expense ($400) and thus did not obscure all indications that he might have an interest in a life insurance policy. This expense disclosure alone could have suggested to the trustee and creditors that an undisclosed potential interest in a life insurance policy would be something to inquire about at the meeting of creditors. Further, whether a mistake, misunderstanding, or something else led to the initial nondisclosure, Mr. Fenstermaker rectified the inaccuracy by amending schedule A/B relatively quickly—and before any meeting of creditors was held. These circumstances are not akin to those in decisions relied upon by Ms. Fenstermaker that were unfavorable to debtors.

Thus, for the above reasons, the objection to Mr. Fenstermaker's exemption of the life insurance policy is overruled.

*Retirement/Pension Accounts*

On his second amended schedule A/B, Mr. Fenstermaker disclosed interests in two additional retirement or pension accounts—"New York City Employees' Retirement" and "New York State Employees' Retirement"—and indicated that these assets were related to his divorce, which remains pending. On amended schedule C, he claimed exemptions under federal and state law in each of the accounts, and Ms. Fenstermaker objected to those exemptions. Noting that the accounts originated from her employment, she contends that any interest of Mr.

4

Fenstermaker's in the accounts would not qualify for the claimed exemptions. Among the arguments in his response, Mr. Fenstermaker asserts that his interests in the accounts are not property of the bankruptcy estate, which, if correct, would avoid the need to resolve whether the claimed exemptions apply. In support, Mr. Fenstermaker focuses on 11 U.S.C. § 541(c)(2).

In her written objection to the exemptions, Ms. Fenstermaker had focused on the statutory bases for the exemptions themselves. She did not address (nor would there necessarily have been any reason for her to address) the import, if any, of section 541(c)(2). At the hearing on the objections, during a discussion of the accounts, she expressed a desire to have an opportunity to provide the Court with further briefing. As a result, Ms. Fenstermaker may file a supplemental legal memorandum to address the following issues:

1. Whether the New York City Employees' Retirement System is a trust in which the members hold beneficial interests.

2. Whether the New York State and Local Retirement System is a trust in which the members hold beneficial interests.

3. When he filed his bankruptcy petition on May 23, 2024 ("the petition date"), did Mr. Fenstermaker have any beneficial interest in Ms. Fenstermaker's account with the New York City Employees' Retirement System?

4. On the petition date, did Mr. Fenstermaker have any beneficial interest in Ms. Fenstermaker's account with the New York State and Local Retirement System?

5. Assuming, as the parties seem to agree, that there was no qualified domestic relations order (or anything similar) in effect as of the petition date, does the absence of a QDRO affect the answers to questions 3 and 4 above and, if so, how?

6. Do (i) specific plan documents creating or governing the New York City Employees' Retirement System and/or (ii) nonbankruptcy law applicable to that system impose a restriction on the transfer of beneficial interests?

7. Do (i) specific plan documents creating or governing the New York State and Local Retirement System and/or (ii) nonbankruptcy law applicable to that system impose a restriction on the transfer of beneficial interests?

8. If restrictions on the transfer of beneficial interests are imposed as to either system (see questions 6 and 7 above), are those restrictions enforceable under applicable nonbankruptcy law?

Such a memorandum must not exceed 30 pages and must be filed no later than February 24, 2026.[4] After the timely filing of any such memorandum, the Court will issue a separate order giving Mr. Fenstermaker an opportunity to respond.

Dated: January 13, 2026

                                          Michael A. Fagone
                                          United States Bankruptcy Judge
                                          District of Maine

---

[4] Because he joined in Ms. Fenstermaker's objections, the chapter 7 trustee may also file a supplemental legal memorandum on the same questions and under the same limitations as Ms. Fenstermaker. Further, as to the trustee's still-pending Motion to Sell Property [Dkt. No. 63] and Motion to Approve Compromise [Dkt. No. 64], the Court will continue to defer additional action on those motions until after a complete resolution of the objections to exemptions, as the motions involve some of the same property that is at issue in the objections.